[No. 24391. *En Banc.* July 7, 1934.]

WILLIAM P. MASON, *Respondent,* v. W. H. MATTHEWS *et al., Appellants.*

M. C. BEAN *et al., Respondents,* v. W. H. MATTHEWS *et al., Appellants.*[1]

*Gleeson & Gleeson,* for appellants.
*Edward M. Connelly,* for respondents.

MITCHELL, J.—W. H. Matthews and wife, of Spokane, were owners of considerable waterfront property on Deer Lake, in Stevens county, about forty miles from Spokane. It was divided into lots suitable for summer homes. It was acquired by them for sale, and

[1]Reported in 34 P. (2d) 367.

was sold by them through one F. L. Buell, a real estate agent with offices in Spokane, who sold quite a number of the lots. He sold one to William P. Mason in July, 1926, and another one to M. C. Bean in May, 1927. Each sale was evidenced by an executory real estate contract between Buell and the purchaser, each purchaser not knowing Matthews and his wife were the real owners.

Mason at once entered into possession of the lot he purchased, and erected thereon a substantial residence building, made other improvements thereon, and occupied the premises the balance of that season and the following summer seasons until he and his wife sold the property to C. S. Coutts, a good faith purchaser for value, who, with his wife, has since occupied the premises. Bean entered into possession of the lot he purchased, at once built a substantial residence on it, and otherwise improved it, and has at all times since occupied the property. The purchasers paid taxes on their respective properties and completed payments, according to the terms of their real estate contracts, before commencing these actions, except a small amount on the Bean contract, which was brought into court when his suit was commenced.

Upon learning that Matthews and his wife were the real owners of the property, each purchaser, in 1931, demanded a conveyance from them, the refusal of which resulted in the commencement of these actions against Matthews and his wife to compel conveyances. In the action by Mason, his grantees, C. S. Coutts and wife, were brought in as additional parties plaintiff. The two actions were consolidated for trial. A judgment was entered for the plaintiffs in each action. The defendants have appealed. The two actions have been presented together upon appeal.

■ There are many assignments of error, but it will not be necessary to discuss them separately and in detail because of our views upon the principal and controlling issue—an issue of fact, as to whether Buell was the agent of Matthews. Appellants claim they are not liable because Buell was not their agent. Mr. Matthews did testify that Buell was not their agent, but acted independently, and that whenever he wanted one of the lots in question, it was sold and conveyed to him. That idea appears primarily upon the face of his testimony, but upon further and final consideration, the facts in that respect are against him. His testimony further showed that he and Buell had been acquainted for a number of years and had had a number of transactions with each other, and that, in conducting the sales of the waterfront lots in question, they had several ways of transacting the business. Generally, upon learning that Buell had made a sale, Matthews prepared a quitclaim deed of the property to Buell to be delivered when Buell's purchaser completed payments, or, as provided in one case of a sale to a person not a party to these actions, the instruments covering the transaction were deposited in escrow with a bank, which delivered Matthews' deed upon completing payment of the purchase price; and still another plan adopted in one transaction, Matthews delivered his deed to Buell for the benefit of the purchaser, through Buell, immediately upon the agent making the sale and before Matthews received any part of the contract price.

It appears that these different ways of conducting the business were largely matters of form and convenience. That Buell was Matthews' agent to sell with the power to collect, was well-established by the proof. Matthews, in testifying, admitted that, on a prior oc-

casion, in a trial in the superior court and in a case wherein he was a party, he testified that Buell was his agent in selling this property. Still further, one witness testified that, in a business conversation between her mother and Matthews concerning these lots, she heard Mr. Matthews say: ''Mr. Buell had been conducting sales of the Deer Lake. lots on a fifty-fifty basis.'' Mrs. Coutts testified that Mr. Matthews admitted to her that Buell acted as his agent in selling the lots, and that, when the agent collected money, he was to return half of the price to Mr. Matthews and keep half, and then he gave him the release deed. Mr. Matthews disputed the testimony of these two witnesses, but that presented an issue of fact to the trial judge, who, upon what appears to be a preponderance of the evidence, found that Buell was the agent of Matthews.

The respondents bought real property from an agent who had the power to sell and the power to collect, each immediately took possession of and improved his property, each paid taxes on and has held undisturbed possession of his property several years, and each has completed payments of the contract price—full performance on the part of each purchaser entitling him, as against the appellants, to the relief prayed for and granted.

Both judgments affirmed.

BEALS, C. J., MAIN, STEINERT, MILLARD, TOLMAN, HOLCOMB, and GERAGHTY, JJ., concur.

BLAKE, J. (dissenting)—I dissent. Matthews at all times was the record and real owner of the property. In the absence of ratification or of circumstances creating an estoppel, an agency to sell real estate of another can be established only by written authority of the

owner. Hitherto, I had supposed that such an agency could be established only through a power of attorney. This court, I think, has so held in *Murphy v. Clarkson,* 25 Wash. 585, 66 Pac. 51. In that case, Clarkson executed a power of attorney to one Fehren to sell certain property. Murphy entered into a contract to purchase the property. The contract was executed by Fehren-Marvin Company, by Charles E. Marvin, as vendor. Clarkson was not mentioned in the contract. Murphy did not actually know that Clarkson owned or had any interest in the property. Clarkson refused to convey, and Murphy sued to recover the amounts paid to Fehren-Marvin Company and damages for loss of his bargain. The court said:

"The verdict returned in this case being for such a small amount, we should hesitate to interfere with it were it not that an important principle seems to be involved. The complaint and proof show that the lots belonged to Clarkson and wife. They had made Fehren their agent by power of attorney. The contract for sale was not made by Fehren, but by Fehren-Marvin Company. The latter were never authorized by the Clarksons to contract for the sale of the lands. The contract itself was not even drawn or signed by Fehren, but by Marvin, another member of Fehren-Marvin Company. The Clarksons are nowhere mentioned in the contract. It is drawn as though Fehren-Marvin Company were the owners of the land. The relation of principal and agent is nowhere disclosed in the instrument. It is alleged that through mistake it was so drawn. It is not alleged that the mistake was mutual, nor does the evidence show such to have been the fact. We are unable to find from the evidence that Murphy knew or believed that he was dealing with an agent. It does not satisfactorily appear that he knew at that time that the Clarksons were the owners of the land. Fehren testified that he authorized the substance of the contract as it was drawn, but that it was drawn as the contract of Fehren-Marvin Company through mistake.

Murphy, however, does not appear to have been in possession of the facts which constituted the alleged mistake. He must have dealt with Fehren-Marvin Company believing them to be the owners of the land and able to give the title which they guaranteed in the contract. It is not shown that he was fraudulently misled, or that he could not, by the exercise of reasonable diligence, have discovered the facts. He now attempts to show by parol proof that he was in fact dealing with the Clarksons through Fehren-Marvin Company as sub-agents of Fehren. All this is foreign to anything appearing upon the face of the written contract. Clearly, we think his remedy is against the party with whom he contracted as shown by the face of the writing.''